UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DANIEL LEE EBY,<br><br>               Petitioner,<br><br>v.<br><br>STATE OF IDAHO and RANDY<br>BLADES,<br><br>               Respondents. | Case No. 3:02-cv-00113-MHW<br><br>**MEMORANDUM DECISION AND<br>ORDER** |

Pending before the Court is Petitioner Daniel Lee Eby's Amended Petition for Writ of Habeas Corpus, which challenges Petitioner's January 1999 convictions for murder and conspiracy to commit robbery. (Dkt. 13.) On April 8, 2014, the Court granted Respondents' motion for partial summary dismissal and dismissed Claims Two, Five, and Six as procedurally defaulted. (Dkt. 29.) On September 22, 2014, the Court also dismissed Claim Three as procedurally defaulted. (Dkt. 37.)

The merits of Claims One and Four, Petitioner's only remaining claims, are now fully briefed.[1] Having carefully reviewed the record in this matter, including the state

---

[1]      The Court will grant the parties' respective motions for extensions of time to file their merits briefing.

**MEMORANDUM DECISION AND ORDER - 1**

court record, the Court concludes that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d).

All parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Dkt. 20.) Accordingly, the Court enters the following Order denying habeas corpus relief on Claims One and Four and dismissing this case with prejudice.

## BACKGROUND

The Court takes judicial notice of the records from Petitioner's state court proceedings, lodged by Respondents on September 6, 2013, and January 9, 2015. (Dkt. 22, 39.) *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006). Petitioner's convictions stem from the murder of Mel Evenson.

The Idaho Court of Appeals described the underlying facts as follows:

> Mel Evenson[] was murdered late in the night of March 25 or early the next morning. On that night, [Petitioner], Jeremy Schmitz, Cliff Hicks and Evenson were working on cars in a garage belonging to Gerald Smith. Inside the adjacent residence were Smith and several other individuals. While in the garage, Evenson was repeatedly struck in the head with a baseball bat and with a large wrench. His clothing was removed and was then burned in a wood stove in the garage. Evenson's body was wrapped in a tarp and placed in the bed of his own truck. The body was then covered with flattened cardboard boxes, and the truck was abandoned in the countryside.
>
> Approximately one month later, law enforcement officers found Evenson's body. An autopsy revealed that he had died of multiple cranial cerebral injuries due to blunt force impacts to his head. Further investigation led law enforcement officers

MEMORANDUM DECISION AND ORDER - 2

> to the garage where they discovered blood on the wood stove
> and on a motorcycle. Persons who had been present at Gerald
> Smith's residence on the night of Evenson's death were
> questioned by police. . . . It was the prosecution's theory that,
> on the evening in question, [Petitioner], Schmitz and Hicks
> believed that Evenson was carrying a substantial amount of
> narcotics and cash because he had just returned from an out-
> of-town drug transaction, and the three decided to kill
> Evenson in order to steal his money and drugs.

*State v. Eby*, 37 P.3d 625, 627 (Idaho Ct. App. 2001.)

Petitioner was charged in the First Judicial District Court in Kootenai County,

Idaho, with first-degree murder, conspiracy to commit robbery, and attempted robbery.

The charging document asserted that Petitioner committed first-degree murder under

alternative theories—premeditated murder or murder during the course of a felony. (*See*

State's Lodging A-1 at 78-79.)

Petitioner's trial attorneys, Lynn Nelson and John Bradford Chapman, were

deputy public defenders for the Kootenai County Public Defender's Office. Petitioner's

two accomplices, Schmitz and Hicks, were also charged. Schmitz was represented by

John Adams, the Kootenai County Public Defender (who had supervisory authority over

Petitioner's attorneys). Prior to trial, the state raised the issue of a potential conflict of

interest between Schmitz's and Petitioner's attorneys. Brad Chapman, one of Petitioner's

attorneys, told the court that he and his co-counsel had "thought about this [issue] very

seriously." (State's Lodging A-4 at 50.) Mr. Chapman continued:

> We have a wall, a very serious wall erected between
> [Petitioner's] counsel, [Petitioner's investigator and the
> codefendant Mr. Schmitz in this case, that wall has not been
> broken.

**MEMORANDUM DECISION AND ORDER - 3**

. . . .

> This wall within our office is tight, it's one where we don't
> have access to their evidence, we don't have access to their
> investigation, we don't have access to anything they have. . . .

(*Id*.) Petitioner was present for this colloquy, and it does not appear that he objected to the concurrent representation. The trial judge did not appoint new counsel or otherwise indicate concern with the situation.

Schmitz ultimately confessed, telling police that he and Petitioner had beaten Evenson to death. (*Id*. at 628.) Schmitz pleaded guilty to second-degree murder. (State's Lodging A-4 at 589-90.) Petitioner pleaded not guilty and proceeded to trial.

Schmitz was called to testify at Petitioner's trial, but he refused to do so. (*Id*. at 577-80, 602.) The trial court then allowed—over Petitioner's objection—the testimony of Detective Paul Middlemore, the officer who took Schmitz's confession. (*Id*. at 594-98.) The detective testified that although Schmitz initially denied knowledge of the crimes, Schmitz eventually stated that "there was an idea to rob Mel Evenson and it was [Petitioner's] idea." (*Id*. at 607-08.) Detective Middlemore testified that, according to Schmitz's statement, Petitioner beat the victim to the ground with some type of hammer or splitting maul, and Schmitz then "joined in" and beat the victim with a baseball bat. (*Id*. at 609, 647.)

The jury found Petitioner guilty of all charges. The verdict did not identify whether Petitioner's first-degree murder conviction was based on a theory of premeditated murder or of felony murder. Petitioner was sentenced to a unified sentence of life imprisonment with 25 years fixed for the first-degree murder count, and fixed 15-

**MEMORANDUM DECISION AND ORDER - 4**

year sentences for the attempted robbery and conspiracy to commit robbery counts, with the sentences to be served concurrently. The Idaho Court of Appeals later vacated the attempted robbery conviction.

On direct appeal, Petitioner raised a number of claims, including a claim that the admission of co-conspirator Schmitz's statement violated Petitioner's right to confrontation under the Sixth Amendment. (State's Lodging B-1.) The Idaho Court of Appeals held that although the admission of Schmitz's statements violated the Sixth Amendment, the error was harmless beyond a reasonable doubt. (State's Lodging B-3 at 4-7.) The Idaho Supreme Court denied Petitioner's petition for review. (State's Lodging B-9.)

Petitioner later pursued postconviction relief in the Idaho state courts. Petitioner argued, among other things, that he was denied his right to conflict-free counsel under the Sixth Amendment. (State's Lodging E-1 at 4.) The state district court denied the postconviction petition after an evidentiary hearing. (State's Lodging E-1 at 49-59; E-4.)

Petitioner filed a pro se appeal and raised two issues, one of which was his conflict of interest claim. (State's Lodging F-5.) The Idaho Court of Appeals affirmed the denial of postconviction relief, holding that there was no evidence in the record that any conflict of interest was likely to result in prejudice to Petitioner. (State's Lodging F-8 at 8-9.) The Idaho Supreme Court denied review. (State's Lodging F-11.)

In 2002, Petitioner filed his federal habeas petition, which was stayed for a time while Petitioner exhausted his claims in state court. Petitioner then filed an Amended Petition. As noted above, the Court has dismissed all but two of Petitioner's claims:

**MEMORANDUM DECISION AND ORDER - 5**

Claim One, that the admission of Schmitz's statement implicating Petitioner in the

murder violated the Sixth Amendment; and Claim Four, that Petitioner was denied his

right to conflict-free counsel. The Court now turns to the merits of those two claims.

## HABEAS CORPUS STANDARD OF LAW

Federal habeas corpus relief may be granted on claims adjudicated on the merits in

a state court judgment when the federal court determines that the petitioner "is in custody

in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

§ 2254(a). Under § 2254(d), as amended by the Anti-terrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), federal habeas relief is further limited to instances

where the state court's adjudication of the petitioner's claim

> (1)    resulted in a decision that was contrary to, or
>        involved an unreasonable application of, clearly
>        established Federal law, as determined by the
>        Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an
>        unreasonable determination of the facts in light
>        of the evidence presented in the State court
>        proceeding.

28 U.S.C. § 2254(d). A federal habeas court reviews the state court's "last reasoned

decision" in determining whether a petitioner is entitled to relief. *Ylst v. Nunnemaker*, 501

U.S. 797, 804 (1991).

When a party contests the state court's legal conclusions, including application of

the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests:

the "contrary to" test and the "unreasonable application" test.

**MEMORANDUM DECISION AND ORDER - 6**

Under the first test, a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] [has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1) the petitioner must show that the state court—although identifying "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014).

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. If there is any possibility that fairminded jurists could disagree on the correctness of the state court's decision, then relief is not warranted under § 2254(d)(1). *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (internal citation omitted).

**MEMORANDUM DECISION AND ORDER - 7**

Though the source of clearly established federal law must come from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999). Circuit law may not be used, however, "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).

As to the facts, the United States Supreme Court has clarified "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). This means that evidence not presented to the state court may not be introduced on federal habeas review if a claim was adjudicated on the merits in state court and if the underlying factual determination of the state court was not unreasonable. *See Murray v. Schriro*, 745 F.3d 984, 999 (9th Cir. 2014).

When a petitioner contests the reasonableness of the state court's factual determinations, the petitioner must show that the state court decision was based upon factual determinations that were "unreasonable . . . in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010).

The United States Court of Appeals for the Ninth Circuit has identified five types of unreasonable factual determinations that result from procedural flaws that occurred in

**MEMORANDUM DECISION AND ORDER - 8**

state court proceedings: (1) when state courts fail to make a finding of fact; (2) when

courts mistakenly make factual findings under the wrong legal standard; (3) when "the

fact-finding process itself is defective," such as when a state court "makes evidentiary

findings without holding a hearing"; (4) when courts "plainly misapprehend or misstate

the record in making their findings, and the misapprehension goes to a material factual

issue that is central to petitioner's claim"; or (5) when "the state court has before it, yet

apparently ignores, evidence that supports petitioner's claim." *Taylor v. Maddox*, 366

F.3d. 992, 1000-01 (9th Cir. 2004). State court findings of fact are presumed to be

correct, and the petitioner has the burden of rebutting this presumption by clear and

convincing evidence. 28 U.S.C. § 2254(e)(1).

## CLAIM ONE: ADMISSION OF SCHMITZ'S STATEMENT

In Claim One, Petitioner challenges, under the Confrontation Clause, the

admission of co-conspirator Schmitz's hearsay statement that Petitioner, and then

Schmitz, beat Evenson to death.

**1.    Clearly-Established Law Regarding Confrontation Clause Claims**

The Sixth Amendment guarantees an accused the right to confront the witnesses

against him. In April 2001, when the Idaho Court of Appeals considered Petitioner's

Confrontation Clause claim, the question of how the Confrontation Clause applied to

hearsay statements was governed by *Ohio v. Roberts*,  448 U.S. 56 (1980).[2] *Roberts* held

---

[2]     *Ohio v. Roberts* was later abrogated by *Crawford v. Washington*, 541 U.S. 36, 53-59 (2004), which held that the Confrontation Clause prohibits the introduction of hearsay statements that are testimonial, unless the declarant is unavailable to testify at trial and the defendant had a prior opportunity to cross-examine the declarant. *Crawford* does not apply in this case, as it was decided after Petitioner's

**MEMORANDUM DECISION AND ORDER - 9**

that a hearsay statement of an unavailable declarant was admissible under the

Confrontation Clause so long as the hearsay was "marked with such trustworthiness that

'there is no material departure from the reason of the general rule.'" *Id.* at 65 (quoting

*Snyder v. Massachusetts*, 291 U.S. 97, 107 (1934). That is, to be admissible, a hearsay

statement had to have sufficient "indicia of reliability," which was established by

showing either (1) that the statement fell within "a firmly rooted hearsay exception," or

(2) that the statement was imbued with "particularized guarantees of trustworthiness." *Id*.

at 66.

      In *Lilly v. Virginia*, which was decided approximately five months after Petitioner

was convicted, the United States Supreme Court held that a non-testifying co-

conspirator's hearsay statement inculpating a defendant did not fall within a firmly rooted

hearsay exception. 527 U.S. 116, 134 (1999). Further, because a co-conspirator's

statement is inherently unreliable, the Court held that there is a rebuttable presumption of

unreliability attached to such statements; this presumption can rarely be rebutted when

the government is involved in securing the hearsay statement "and when the statements

describe past events and have not been subjected to adversarial testing." (*Id*. at 137.)

## 2.    Harmless Error Standard of Law

      Some constitutional errors—such as the denial of the right to counsel—are

considered structural errors, meaning that the right affected is so fundamental that the

verdict cannot stand, regardless of whether the error affected the outcome of the trial;

---

conviction became final. *See Whorton v. Bockting*, 549 U.S. 406, 418-21 (2007) (holding that *Crawford* does not apply retroactively to cases on collateral review).

such errors result in automatic reversal of the conviction. *See Arizona v. Fulminante*, 499 U.S. 279, 294 (1991). "[I]n the absence of 'the rare type of error' that requires automatic reversal, relief is appropriate only if the prosecution cannot demonstrate harmlessness." *Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015) (quoting *Glebe v. Frost*, 135 S. Ct. 429, 430 (2014) (per curiam)). Confrontation Clause violations, like most constitutional errors, are not structural and, therefore, are subject to harmless error analysis. *See Bain v. Cambra*, 204 F.3d 964, 977-78 (9th Cir. 2000).

On direct appeal, a constitutional error can be considered harmless only if the government proves that the error was "harmless beyond a reasonable doubt," as explained in *Chapman v. California*, 386 U.S. 18, 24 (1967). The test for harmless error is different on collateral review. Habeas petitioners are not "entitled to habeas relief based on trial error unless they can establish that [the error] resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Under the "actual prejudice" standard of *Brecht*, an error is not harmless—and habeas relief must be granted—only if the federal court has "grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *O'Neal v. McAninch*, 513 U. S. 432, 436 (1995) (internal quotation marks omitted). A "reasonable possibility" of prejudice is not sufficient. *Brecht*, 507 U.S. at 637.

The restrictions of § 2254(d) apply to state courts' harmlessness determinations. *Ayala*, 135 S. Ct. at 2198-99. Thus, in addition to considering the *Brecht* standard, a federal court on habeas review also considers whether fairminded jurists could debate whether the state court's *Chapman* analysis was reasonable. *See Harrington v. Richter*,

**MEMORANDUM DECISION AND ORDER - 11**

562 U.S. 86, 101 (2011). A *Brecht* analysis "subsumes" the standards of § 2254(d), *Fry v. Pliler*, 551 U.S. 112, 120 (2007), and although a federal court "need not formally apply both *Brecht* and AEDPA/*Chapman*," § 2254(d) "nevertheless sets forth a precondition to the grant of habeas relief." *Ayala*, 135 S. Ct. at 2198 (internal quotation marks and alteration omitted).

3.    **The Idaho Court of Appeals' Rejection of Claim One on Harmlessness Grounds Was Reasonable, and Petitioner Has Not Shown Actual Prejudice under** *Brecht v. Abrahamson*

The trial court allowed Detective Middlemore to testify, under the statement-against-interest exception to the rule against hearsay, that Schmitz had said Petitioner was the one who came up with the idea to rob Evenson and that Petitioner initiated the beating from which Evenson died. (State's Lodging A-4 at 593-95.) The Idaho Court of Appeals recognized that, under the Supreme Court's then-recent *Lilly* decision, the admission of that testimony violated Petitioner's rights under the Confrontation Clause. (State's Lodging B-3 at 6.)

However, the Court of Appeals held that the admission of Schmitz's statements was harmless. The court pointed to the "properly admitted" and overwhelming evidence that Petitioner participated in the robbery and, therefore, was guilty of felony murder without regard to whether he beat the victim at all. (*Id*. at 7.) Gerald Smith, the owner of the property where the crimes took place, testified that, on the night of the murder, Petitioner told Gerald, "We are going to mug Mel." (*Id*.) Smith testified further that Petitioner encouraged other people present at the house to leave, telling them to go to the store and buy food and cigarettes. (*Id*.) And Petitioner's own incriminating statements

**MEMORANDUM DECISION AND ORDER - 12**

established that "he stood guard while Hicks and Schmitz beat Evenson to death with a baseball bat and a large pipe wrench," that he searched Evenson's clothes for drugs and money, and that he concealed the body in the victim's truck. (*Id*.) Faced with this evidence, the court of appeals was "persuaded beyond a reasonable doubt that . . . the jury would have found that [Petitioner] participated in the attempt to rob Evenson and therefore was guilty of felony murder even if the jury had never heard the hearsay evidence of Schmitz's confession." (*Id*.)

Having reviewed the transcripts of Petitioner's trial, the Court concludes that Petitioner has not established that the admission of Schmitz's hearsay statement resulted in actual prejudice under *Brecht v. Abrahamson*. Further, the record supports the Idaho Court of Appeals' harmlessness determination, and, therefore, that court's application of *Chapman v. California* was reasonable, and habeas relief is prohibited under § 2254(d)(1). The factual findings of the state court are also well-supported by the record, and Petitioner has therefore not shown that any such findings are unreasonable under § 2254(d)(2). The evidence of Petitioner's participation in the underlying felony— conspiracy to commit robbery—was overwhelming. Therefore, the jury would have found Petitioner guilty of first-degree felony murder even without hearing evidence of Schmitz's statements. Claim One must be denied on the merits because Petitioner has not shown that he was prejudiced by the admission of Schmitz's out-of-court statements.

## CLAIM FOUR: CONFLICT OF INTEREST

In Claim Four, Petitioner claims that he was denied the right to conflict-free counsel because (1) his trial attorneys were members of the same public defender's office

**MEMORANDUM DECISION AND ORDER - 13**

as Schmitz's attorney, (2) the investigator who worked on Petitioner's case was married to the investigator on Schmitz's case, and (3) Petitioner was not informed of any potential conflict. (Am. Pet. at 8.)

## 1.   Clearly-Established Law Regarding Attorney Conflicts of Interest

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of defense counsel, which includes the right to be represented by conflict-free counsel. *Wood v. Georgia*, 450 U.S. 261, 271 (1981). A *potential* conflict of interest, however, is not enough. *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980) (stating that the mere "possibility of [a] conflict is insufficient to impugn a criminal conviction"). Instead, a petitioner asserting an attorney conflict-of interest claim must "show that potential conflicts impermissibly imperil[ed] his right to a fair trial."[3] *Cuyler*, 446 U.S. at 348 (internal citations omitted).

A potential conflict exists where the same counsel represents two defendants in criminal actions arising from the same set of facts. In such a case, the representation of two defendants "could prejudice either or both clients." *Burger v. Kemp*, 483 U.S. 776 (U.S. 1987). Where, as here, multiple defendants are represented by different attorneys in a single public defender's office, that representation, which the Court will refer to as "concurrent representation," might also give rise to a conflict of interest. However, it is

---

[3]      Prejudice arising from a conflict of interest is presumed "only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that "an actual conflict of interest adversely affected his lawyer's performance.'" *Burger v. Kemp*, 483 U.S. 776, 783 (1987) (internal citations omitted). *See also Mickens v. Taylor*, 535 U.S. 162, 172-73 (2002) (rejecting the proposed rule of automatic reversal of a conviction where there existed a conflict that did not actually affect counsel's performance).

**MEMORANDUM DECISION AND ORDER - 14**

well established that "[r]equiring or allowing a single attorney to represent two co-defendants, often referred to as joint representation, is not *per se* violative of constitutional guarantees of effective assistance of counsel." *Holloway v. Arkansas*, 435 U.S. 475, 482 (1978). It follows, then, that multiple county public defenders representing different co-defendants is also not a *per se* violation of the Sixth Amendment. Rather, joint representation—and, by extension, concurrent representation of co-defendants by different attorneys in the same public defender's office—violates the Constitution only if the defendant's attorney has an *actual* conflict of interest "*that affected counsel's performance*—as opposed to a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 170 (2002).

When a trial court is made aware of an attorney's potential conflict of interest, the court must either appoint new counsel or take adequate steps to determine whether the risk of an actual conflict is too remote to warrant appointment of new counsel. *Holloway*, 435 U.S. at 484.

**2.     The Idaho Court of Appeals' Rejection of Claim Four Was Reasonable**

As noted previously, the issue of a potential conflict of interest between Petitioner's attorneys and Mr. Adams, who was Schmitz's attorney, was presented to the trial court during a pretrial hearing. (State's Lodging A-4 at 50.) One of Petitioner's attorneys stated that they had erected, and would continue to maintain, a "Chinese wall" between the two cases so that no information or staff participation would be shared. No one present at the pretrial hearing, including Petitioner and the trial judge, expressed any

**MEMORANDUM DECISION AND ORDER - 15**

dissatisfaction with that explanation or otherwise expressed concern to the concurrent representation.

In state postconviction proceedings, the state court held an evidentiary hearing on Petitioner's claim that his defense team had a conflict with the attorney representing Schmitz. John Adams, the supervising public defender and the attorney who represented Schmitz, testified that although he did not independently recall the conflict issue in Petitioner's and Schmitz's case, he and the other public defenders involved would have erected "what lawyers call a 'Chinese Wall'"—that is, they would not have shared information, discussed the case, or shared staff on the matters. (State's Lodging E-4 at 11.) Adams testified that the attorneys in the public defender's office no longer engage in concurrent representation, "because I think that was probably an ethical violation." (*Id*. at 14.) In hindsight, Adams stated that concurrent representation of co-defendants within the public defender's office was a "bad practice," but he was unable to articulate any specific prejudice that may have resulted for either Petitioner or Schmitz. (*Id*. at 18.)

Lynn Nelson, one of the attorneys who represented Petitioner, testified that the metaphorical wall was, indeed, erected between the attorneys and investigators working on Petitioner's and Schmitz's respective defenses and that Nelson did not have any concerns about the issue. (*Id*. at 25-26.) Nelson testified that concurrent representation by different attorneys in the public defender's office should be avoided if possible, but that he did not consider it unethical to offer such representation if the metaphorical wall is maintained. (*Id*. at 47-48.) Nelson stated that the defense teams used different

**MEMORANDUM DECISION AND ORDER - 16**

investigators and that, although the two investigators were married to each other, they were "dedicated professionals, and they guard[ed] their secrets very closely." (*Id*. at 66.)

Petitioner's other attorney, John Bradford Chapman, testified that the fact that Petitioner and Schmitz were represented by different attorneys in the same public defender's office raised a concern because of the "appearance of impropriety." (*Id*. at 70.) Chapman did not specifically recall discussing the conflict issue with Petitioner or with the attorney representing Schmitz. Petitioner's attorneys both testified as to their general practice of discussing issues with their clients and had no reason to believe that they deviated from that practice while representing Petitioner. (*Id*. at 44-68, 75-90.)

Petitioner testified at the postconviction evidentiary hearing as well. He stated that he was never informed that Schmitz's attorney worked in the same public defender's office as, and in fact supervised, his own attorneys or that the representation could pose a potential conflict of interest. (*Id*. at 96.) Petitioner also testified that he was not aware that the investigators on his and Schmitz's cases were married to each other. (*Id*. at 101.)

The investigator assigned to Petitioner's case also testified at the evidentiary hearing that he and his wife, who was working on Schmitz's case, never discussed their work with each other:

> There was a Chinese wall from day one. No, we could not talk about the case. To this day, we still haven't talked about what either one found out in their investigations. I know that we both went out to the crime scene at the same time, both saw the same thing, but we didn't do interviews together nor did we do anything that would have conflicted or jeopardized the Chinese wall.

(*Id*. at 150.)

**MEMORANDUM DECISION AND ORDER - 17**

Faced with this evidence, the Idaho Court of Appeals first held that because the trial court "held a hearing on the record in the criminal case and gave both sides the opportunity to address the potential conflict," Petitioner could not obtain an automatic reversal, but rather was required to show that a conflict of interest actually imperiled his chance of a fair trial. The state court then determined that there was no actual conflict because Petitioner's attorneys were not "acting in a manner adverse to [Petitioner's] interests" and "took steps to ensure that [Petitioner] received diligent representation" by erecting and maintaining the metaphorical wall. (State's Lodging F-8 at 7.) The court further held that any conflict—if one existed—was not "likely to result in prejudice." (*Id.*)

In reaching its conclusions, the Idaho Court of Appeals reasonably applied *Wood v. Georgia* and *Cuyler v. Sullivan*. *See* 28 U.S.C. § 2254(d)(1). Petitioner did not—and to this day has not—come forward with any evidence suggesting that his attorneys had an actual conflict of interest with Schmitz's attorney or that the concurrent representation of different attorneys in the public defender's office resulted in any prejudice to Petitioner. Further, Petitioner has not shown that the court of appeals' decision rested on an unreasonable determination of fact. *See* 28 U.S.C. § 2254(d)(2). Therefore, Plaintiff is not entitled to habeas relief on Claim Four.

## CONCLUSION

The Idaho Court of Appeals' decisions rejecting Claims One and Four were not contrary to, or unreasonable applications of, clearly-established Supreme Court

**MEMORANDUM DECISION AND ORDER - 18**

precedent, nor were those decisions based on unreasonable factual determinations.

Therefore, § 2254(d) precludes habeas relief on these two claims.

**ORDER**

**IT IS ORDERED:**

1.     Respondents' Motion for Extension of Time to File Answer (Dkt. 38) is
       GRANTED.

2.     Petitioner's Motion for Extension of Time to File Reply (Dkt. 41) is
       GRANTED.

3.     Claims One and Four of the Amended Petition for Writ of Habeas Corpus
       (Dkt. 13) are DENIED. Because all other claims in the Amended Petition
       have been dismissed, this entire action is DISMISSED with prejudice.

4.     The Court does not find its resolution of this habeas matter to be reasonably
       debatable, and a certificate of appealability will not issue. *See* 28 U.S.C.
       § 2253(c); Habeas Rule 11. If Petitioner wishes to appeal, he must file a
       timely notice of appeal with the Clerk of Court. Petitioner may seek a
       certificate of appealability from the Ninth Circuit by filing a request in that
       court.

DATED: **August 20, 2015**

Honorable Mikel H. Williams
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 19**